UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DARRYL MOSIMAN, | |
| Plaintiff, | |
| v. | CASE NO. 3:19-CV-00451-DRL-MGG |
| C & E EXCAVATING, INC., *et al.*, | |
| Defendants. | |

**OPINION AND ORDER**

On November 9, 2020, Plaintiff Darryl Mosiman filed his Motion to Quash a Notice of Deposition and Subpoena. Through his Motion, Plaintiff asks that his deposition be conducted remotely rather than in-person. Defendant Christian Labor Association, Local 10 ("CLA"), filed a response brief in opposition on November 12, 2020, while Defendant C & E Excavating, Inc. ("C & E") filed nothing in response to the Motion. Plaintiff's Motion became ripe on November 20, 2020, without any reply brief being filed. As discussed below, Plaintiff's request for a remote deposition is granted.

**I.   RELEVANT BACKGROUND**

On May 16, 2019, Plaintiff sued C & E and CLA for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), alleging that Defendants discriminated against Plaintiff on the basis of his disability. On September 4, 2019, the undersigned issued a Scheduling Order mandating that all fact and expert discovery be

completed by February 28, 2021.[1] [DE 37]. That discovery deadline was later extended to April 28, 2021, allowing for disposition of the instant Motion. [*See* DE 64].

CLA has served two Notices of Deposition on Plaintiff. The first Notice scheduled Plaintiff's deposition for October 9, 2020. However, that deposition was cancelled on September 29, 2020, because Plaintiff's father had fallen ill. Through the Second Notice served on October 28, 2020, CLA re-scheduled Plaintiff's deposition for November 13, 2020. On November 5, 2020, Plaintiff sent CLA an email requesting that deposition be conducted by Zoom. CLA refused leading to the instant Motion.

II.   **ANALYSIS**

Plaintiff's Motion is styled as a motion to quash. However, motions to quash fall under Federal Rule of Civil Procedure 45, which governs subpoenas to non-parties only. Therefore, the Court construes Plaintiff's Motion as a motion for a protective order under Federal Rule of Civil Procedure 26(c).

Under Federal Rule of Civil Procedure 26(c), this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Pro. 26(c). "District courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). "When exercising its discretion, this Court must balance claims of prejudice and those of hardship and conduct a careful weighing of the relevant facts." *Learning Res., Inc. v. Playgo Toys Enters. Ltd.*, 335 F.R.D. 536, 537 (N.D. Ill. 2020)

---

[1] In the Scheduling Order, this Court noted that a deposition commenced at least five days before the cut-off date may continue beyond the cut-off date.

2

(internal quotation marks and citation omitted). That balancing must reflect consideration of the totality of circumstances when comparing the "value of the material sought against the burden of providing it." *Patterson*, 281 F.3d at 681. "The party moving for a protective order must establish that good cause exists for the Court to exercise its discretion in entering a protective order." *United States v. Ind. Harbor Belt R. Co.*, No. 2:15-CV-87-JVB-JEM, 2015 WL 5474653, at *1 (N.D. Ind. Sept. 16, 2015) (citation omitted).

Here, Plaintiff seeks to have his deposition conducted by Zoom based on safety concerns created by the COVID-19 pandemic. Specifically, Plaintiff argues that (1) there has been an increase in positivity rates for COVID-19 in various geographic areas relevant to Plaintiff's deposition; (2) Zoom depositions involving large numbers of documents can be conducted effectively; and (3) one of Plaintiff's attorneys is located in the City of Chicago, which has included the State of Indiana on its travel ban list.

### A. Health concerns related to COVID-19 provide good cause for remote depositions.

Courts all around the country have "found that the health concerns created by the COVID-19 pandemic are a legitimate reason to take a deposition by remote means." *Valdivia v. Menard Inc.*, No. 19 CV 50336, 2020 WL 4336060, at *1 (N.D. Ill. July 28, 2020); *see also Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2020 WL 3960441, at *3 (N.D. Ill. July 13, 2020) (health concerns created by the COVID-19 pandemic create "good cause" for order requiring remote deposition); *United States ex rel. Adams v. Remain at Home Senior Care, LLC*, No. 1:17-CV-01493-JMC, 2021 WL 856876, at *2 (D.S.C. Mar. 8, 2021)

3

("legitimate reasons exist to hold . . . deposition remotely"). Indeed, the nation's death toll, which currently exceeds more than five hundred thousand people, evidences the seriousness of the virus and legitimizes the reasons for remote depositions. *See In re Broiler Chicken Antitrust Litig.*, No. 1:16-CV-08637, 2020 WL 3469166, at *8 (N.D. Ill. June 25, 2020) (noting the death toll was already over 120,000 as of last summer).

While the threats posed by the virus are serious, they can be mitigated by minimizing person-to-person contact. *See Learning Res., Inc.*, 335 F.R.D. at 538 (noting that "the best way to prevent illness is to minimize person-to-person contact"). Remote depositions minimize person-to-person contact and may mitigate the spread of the virus. Accordingly, while Plaintiff's concerns regarding the increase in COVID-19 positivity rates are based on outdated information,[2] an in-person deposition would still present a greater risk of exposure to the virus than a remote Zoom deposition. Overall, the twin aims of preventing the spread of the virus and protecting the health and safety of all involved provide good cause to hold the deposition remotely.

### B.   A remote deposition will not unduly prejudice CLA.

CLA alleges that deposing Plaintiff remotely will be unduly prejudicial for the following reasons.

---

[2] *See* Indiana COVID-19 Dashboard and Map, IN.GOV, https://www.coronavirus.in.gov/2393.htm (last visited Mar. 4, 2021) (showing positive cases increasing in November and December of 2020, followed by a steady decline since January 2021); COVID Data Tracker, CENTER FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last visited Mar. 4, 2021).

### 1. Large Number of Exhibits

CLA argues that Zoom is impracticable given the large number of exhibits that will be utilized in Plaintiff's deposition. While many documents may complicate the deposition process, courts have suggested that document-intensive depositions can be effectively conducted using remote means. *See, e.g.*, *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 575 (S.D.N.Y. 2020) (noting that large numbers of documents are "not an obstacle to a successful remote videoconference deposition"). In fact, Zoom has a function for screen sharing documents, which allows for greater efficiency during depositions. Furthermore, there are other methods that can be utilized to increase the efficiency of the process. For example, "sending Bates-stamped exhibits to deponents prior to the depositions" may improve the handling of deposition exhibits. *Id.* (citation omitted). Additionally, it should be noted that the number of documents planned for use in this deposition—432 according to CLA—is not huge. *See Helmsetter v. JPMorgan Chase Bank, N.A.*, No. 2:19-CV-2532-KHV-TJJ, 2021 WL 949330, at *8 (D. Kan. Mar. 13, 2021) (noting that 589 documents "is not huge"). Accordingly, CLA will not be unduly prejudiced by the number of the documents involved.

### 2. Credibility

CLA argues that Plaintiff's credibility cannot be adequately assessed via Zoom. But this statement contradicts recent precedent. Indeed, "many courts have determined that remote video depositions provide a 'sufficient opportunity to evaluate a deponent's nonverbal responses, demeanor, and overall credibility.'" *See Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 6149578, at *2 (N.D. Ill. Oct. 20, 2020) (quoting *Learning Res.*,

5

*Inc.*, 335 F.R.D. at 539). Some courts have even held that deposing a witness by videoconference provides a better opportunity for observing a witness' demeanor because the witness would not need to wear a mask. *See, e.g.*, *Rouviere*, 471 F. Supp. 3d at 576. By eliminating the mask, the examiner can observe the full face of the witness, which may aid in assessing credibility. Accordingly, CLA's alleged inability to fully assess Plaintiff's credibility over Zoom is not unduly prejudicial.

### 3. Available Safety Precautions

CLA argues that an in-person deposition can be conducted safely and in accordance with all local, state, and regional COVID-19 orders. While the Court recognizes that an in-person deposition can be conducted in accordance with all relevant orders, the possibility of transmission that may occur by forcing multiple people into a single room presents a risk the Court cannot ignore. Overall, the health and safety of all involved overrides the benefits of an in-person deposition, even though such deposition could be conducted in accordance with state and local orders.

### 4. Delay

CLA alleges that Plaintiff may be delaying the deposition to harass CLA. In support of this statement, CLA states that Plaintiff is represented by a union whose interests are adverse to CLA. CLA's concerns may not be entirely meritless. Plaintiff has cancelled his deposition twice. The first deposition—which was cancelled for non-COVID reasons—was scheduled for October 9, 2020. However, Plaintiff's objection to an in-person deposition was not raised until November 5, 2020—nearly four weeks after the first deposition was to take place. While this delay is suspicious, it is possible that

Plaintiff's concerns only arose once the COVID-19 cases began to climb. Accordingly, while any further delays on the part of Plaintiff will be viewed critically, the Court finds that the safety concerns override any suspicion of delay.

      **5.**    **Cost**

CLA asserts that an in-person deposition will cost less. Specifically, CLA argues that a remote deposition will take longer due to the number of documents involved. While a remote deposition may take longer, the time can be reduced by using the method described earlier—sending Bates-stamped exhibits to deponents prior to the deposition. Moreover, delay that could result should Plaintiff, or any participant, encounter technical difficulties with necessary videoconferencing equipment during the remote deposition can be minimized with pre-deposition training. Accordingly, the additional costs associated with a remote deposition can be mitigated such that CLA will not suffer undue prejudice.

      **6.**    **Case Management Deadlines**

Lastly, CLA argues that conducting the deposition by Zoom will necessitate revision of the case deadlines. However, the case deadlines have already been revised during the pendency of the instant motion. The Court sees no reason why those deadlines will have to be revised again. Furthermore, the Court can establish deposition-related deadlines below that will make certain that the deposition is completed well before the April 28, 2021, discovery deadline.

In sum, the risk of exposure to COVID from an in-person deposition outweighs any prejudice that CLA may face by conducting Plaintiff's deposition remotely. As

such, the Court finds that good cause exists to allow a remote deposition. However, to ensure the deposition is conducted fairly and efficiently, the Court orders the following.

First, to avoid the potential of witness coaching and to allow for a better assessment of credibility, the Plaintiff is required to attend the deposition from a room where he is alone. His attorney may attend remotely from a separate room. The rooms must be private such that the Plaintiff and his counsel cannot see each other or otherwise communicate. Likewise, any private chat feature of the software must be disabled. This removes the threat of improper coaching and allows Plaintiff to be maskless, which will aid CLA in assessing credibility.

Second, Plaintiff's attorney is responsible for ensuring that Plaintiff can effectively operate the videoconferencing software. This may require the provision of training services before the deposition is conducted. All other participants should similarly be trained so as to minimize any technical delays during the remote deposition.

Third, Plaintiff's deposition must begin no later than April 12, 2021.

Finally, if circumstances have changed and the parties now agree that an in-person deposition is preferable, they can forego the remote deposition and conduct Plaintiff's deposition in-person employing all necessary safety precautions such as masking, social distancing, and disinfecting surfaces.

### III.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's construed Rule 26(c) motion for protective order. [DE 47]. In the event the parties choose to conduct

Plaintiff's deposition remotely, the parties are **ORDERED** to comply with the specific requirements set forth in this Order.

**SO ORDERED** this 23rd day of March 2021.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge